Sewickley Valley Hospital, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

The Community Hospital, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Union City Memorial Hospital, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued November 14, 1979, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER and ROGERS. Judges BLATT, DISALLE, CRAIG and MACPHAIL did not participate.

*James H. Stewart, Jr.,* with him *Nauman, Smith, Shissler & Hall; Herman S. Harvey, Jr., Thomas J. Miller* and *Blaxter, O'Neill, Houston & Nash,* for petitioners.

*John A. Kane,* with him *Betty F. Perry,* Assistant Attorney General, for respondents.

Opinion by Judge Wilkinson, Jr., December 27, 1979:

These petitions for review which have been consolidated for purposes of review present the appeals of Sewickley Valley Hospital, Community Hospital, and Union City Memorial Hospital from final administrative action of the Department of Public Welfare (Department) denying their claims for reimbursement in five cases of voluntary nontherapeutic sterilizations performed on otherwise eligible medical assistance patients. We reverse and remand.

Under the Medical Assistance Program, the Department makes payments to participating hospitals for services provided to eligible patients pursuant to Section 443.1 of the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended,* added by the Act of July 31, 1968, P.L. 904, 62 P.S. §443.1 which provides in pertinent part: "The following medical assistance payments shall be made in behalf of eligible persons whose institutional care is prescribed by physicians: (1) The reasonable cost of inpatient hospital care, as specified by regulations of the department adopted under Title XIX of the Federal Social Security Act [42 U.S.C. §1396 *et seq.*]...."

The United States Congress has authorized the funding of a full range of family planning services, which of particular interest to us here is the funding made available through the Medicaid program in Subchapter XIX of the Social Security Act, 42 U.S.C. §1396 *et seq.* The Department of Health, Education and Welfare has promulgated regulations governing the funding of sterilizations as a family planning alternative.[1]

---

[1] The chronological evolution of the Federal regulations with respect to sterilization is complex and an understanding of which is unnecessary to the resolution of the issues here presented. For that

The Department issued Memorandum No. 74, effective January 1, 1975, explaining the Federal restrictions on reimbursement for nontherapeutic sterilizations. Included with the memorandum was the Department's Form MA-71, "Consent Document For Sterilization Procedure", which was to be submitted with each claim for reimbursement.

The MA-71 is composed of two distinct parts. Part 1 consists of a numerical list of the elements of informed consent that must be conveyed to the patient. Following the list, which tracks the elements of informed consent set out in the Federal regulations albeit in somewhat briefer form, the MA-71 provides for the patient's signed affirmation that: "Based upon the explanation provided to me by [name of physician or

---

history see 43 Fed. Reg. 52146 et seq. (1978). The regulations which at the time of their issuance were termed "interim regulations" were codified at 45 C.F.R. §205.35 and provided pertinently as follows:

(2) As used in this paragraph:

(i) *Informed consent* means the voluntary, knowing assent from the individual on whom any sterilization is to be performed after he has been given (as evidenced by a document executed by such individual):

(A) A fair explanation of the procedures to be followed;

(B) A description of the attendant discomforts and risks;

(C) A description of the benefits to be expected;

(D) Counseling concerning appropriate alternative methods; and the effect and impact of the proposed sterilization including the fact that it must be considered to be an irreversible procedure;

(E) An offer to answer any inquiries concerning the procedures;

(F) An instruction that the individual is free to withhold or withdraw his or her consent to the procedure at any time prior to the sterilization without prejudicing his or her future care and without loss of other project or program benefits to which the patient might otherwise be entitled.

designee] according to the above, I hereby request and consent to a sterilization procedure." There is similarly an opportunity provided for an auditor-witness selected by the patient to affirm that, "I was present when the above was orally explained to the patient in detail and to my best knowledge and belief it was understood."

Part 2 of the consent document, "SUMMARY OR [sic] ORAL PRESENTATION OF THE BASIC ELEMENTS OF INFORMED CONSENT," consists of a restatement of each of the elements followed by a space for summarizing the details of the explanation given. This part of the document is to be signed by the physician or his designee who made the oral presentation and the auditor-witness.

In each of the five cases presented by the instant petitions, it is undisputed that Part 1 had been fully and properly executed; the difficulties here arise because Part 2 of the forms submitted by the hospitals was not filled out completely.[2]

The issue in these consolidated appeals is the propriety of the Department's policy refusing post-submission supplementation of the consent documents. In each of the cases, the petitioning hospitals have offered to supply documentary and testimonial evidence to fill in the gaps on the documents which allegedly re-

---

[2] The appeal of Sewickley Valley Hospital, 2240 C.D. 1978 involved a single claim for reimbursement. The omission was item No. 5 indicating that an offer to answer the patient's questions had been made. Unlike the cases of the other two hospitals, conflicting evidence was presented as to whether the form as submitted was incomplete, this issue being resolved against the hospital by the hearing examiner. Community Hospital's appeal, 2452 C.D. 1978 presented two claims for which item No. 5 had been neglected. The appeal of Union City Memorial Hospital, 2453 C.D. 1978 concerned two cases in which item No. 6, an instruction that the patient is free to withhold or withdraw his consent, was incomplete in addition to which the signature of the physician or his designee was undated.

sulted from inadvertence or clerical error. The Department maintains that its refusal to consider such evidence at this time is necessary to insure the availability of matching funds. We must disagree.

Informed consent "means the voluntary, knowing assent from the individual on whom any sterilization is to be performed after he has been given"[3] an oral presentation of the six elements of informed consent. Part 1 of the MA-71 signed by the patient supplies, at least facially, evidence of informed consent. The remainder of the document simply provides additional *evidence* that the oral presentation given the patient was full and adequate and that the informed consent, apparent from Part 1, was actually knowing and voluntary.

Whether informed consent has been obtained from the patient depends in no way upon the completion of Part 2 of the consent document. Indeed informed consent and the oral presentation necessary to its obtainment has occurred or not prior to the time the summary is prepared. The Department certainly has authority to devise a mechanism such as Part 2 for verifying the existence of informed consent. We don't, however, agree that such authority extends to the point where the Department can declare Part 2 of Form MA-71, or at least its pre-submission completion, the exclusive means of verification.

We are unable to accept the Department's contention that permitting post-submission supplementation at an appeal hearing will create an undue administrative burden. In cases where the consent documents are incomplete, the burden of marshalling the necessary evidence will appropriately fall upon the hospital. We think in the great majority of cases documentary evidence such as affidavits of the participants will suf-

---

[3] 45 C.F.R. §205.35(a)(2)(i).

fice and of course the evidentiary burden in such a case should rest with the party seeking reimbursement. We perceive no valid reason to deny to the petitioning hospitals an opportunity to demonstrate that the informed consent evidenced by the patients' signatures was knowing and voluntary and that if Part 2 had been accurately and completely filled out it would support Part 1.

Accordingly, we will enter the following

## ORDER

AND NOW, December 27, 1979, the orders of the Department of Public Welfare in the above captioned cases constituting the final administrative action therein, denying the appeals of Sewickley Valley Hospital, dated August 24, 1978; Union City Memorial Hospital, dated September 27, 1978; and Community Hospital, dated September 25, 1978 are hereby reversed and the records in each of the respective cases shall be remanded to the Department of Public Welfare for a hearing and other appropriate administrative proceedings consistent with the above opinion.

---

DISSENTING OPINION BY JUDGE ROGERS:

I respectfully dissent.

Memorandum No. 74, issued by DPW and effective January 1, 1975, outlined the procedures by which hospitals could obtain reimbursement for the performance of voluntary nontherapeutic sterilizations. The procedures included the completion by the hospitals of both Parts 1 and 2 of form MA-71. DPW concedes, as it must, that Memorandum No. 74 was a policy statement only and not a regulation. *See* Act of July 31, 1968, P.L. 769, §201 *et seq.*, 45 P.S. §1201 *et seq.* On August 6, 1977, DPW published a regulation, effective August 15, 1977, embodying Memorandum No. 74, in-

cluding the use of MA-71. *See* 7 Pa. Bull. 2178, §9421.73. The claims of Community Hospital (Community) arose after August 15, 1977 and are therefore subject to the regulation. The claims of Sewickley Valley Hospital (Sewickley) and Union City Memorial Hospital (Union) arose after January 1, 1977 but before August 15, 1977. Nonetheless, DPW may, as an alternative to rulemaking procedures, proceed by adjudication to establish a binding rule. *Pennsylvania Human Relations Commission v. Norristown Area School District,* 473 Pa. 334, 345, 374 A.2d 671, 677 (1977). This is precisely what DPW did in the cases of Sewickley and Community, and the rule of those adjudications, as well as the regulation, was that both parts of MA-71 must be completed within prescribed time limits as a condition to reimbursement. The only inquiry to be made by this Court, then, is whether this rule is valid and whether the petitioning hospitals complied with this rule.

The rules and regulations of an administrative agency are valid if they are "(a) within the granted power, (b) issued pursuant to proper procedure, and (c) reasonable." *Pennsylvania Association of Life Underwriters v. Department of Insurance,* 29 Pa. Commonwealth Ct. 459, 462, 371 A.2d 564, 566 (1977), *quoting* 1 K.C. DAVIS, ADMINSTRATIVE LAW, §5.03 at 299. The only question raised in these proceedings is that of whether DPW's rule is reasonable. I believe it is. There is uncontroverted testimony in the record that DPW will not receive participating federal funds for its reimbursement program unless both parts of MA-71 are completed as required. It is therefore reasonable for DPW to require hospitals to submit MA-71 forms fully completed as a condition to reimbursement.

The petitioning hospitals contend that, assuming DPW's rule is valid, they should be granted an op-

portunity to show that, although the forms MA-71 they submitted were not complete, they in fact fully complied with regulations and that their failure to complete the forms was merely inadvertent. I disagree. Approval of this position would not only jeopardize DPW's ability to obtain federal reimbursement but would also dramatically increase DPW's administrative burden. DPW,

> its concern having been reasonably aroused by the possibility of an abuse which it legitimately desired to avoid, could rationally have concluded both that a particular limitation or qualification would protect against its occurrence, and that the expense and other difficulties of individual determinations justified the inherent imprecision of a prophylatic rule.

*Weinberger v. Salfi*, 422 U.S. 749, 777 (1975). I perceive of no reason why DPW's position should suffer when the hospitals can protect themselves by a quick and simple check of the full completion of MA-71 in the first instance.

Since I conclude that the rule at issue is valid, the only remaining issue is whether the petitioning hospitals complied with it. Admittedly, Community and Union did not and are in my opinion not entitled to reimbursement. Thus, I would affirm in their cases. A question of fact existed as to whether Sewickley submitted a fully completed form. The hearing examiner found that Sewickley failed to complete Part 2 of MA-71. He based this finding upon purported copies of the MA-71 which Sewickley submitted to DPW, one offered by Sewickley which was complete and the other offered by DPW, which was not. Neither party offered Sewickley's original MA-71 into evidence, it then being in the possession of Blue Shield. Nor was it shown that the original was unavailable. The best evi-

dence was of course the original. Therefore, the conflicting testimony in the record concerning whether Sewickley's MA-71 was complete or incomplete does not provide a sufficient basis for the hearing examiner's finding. I would remand the record to DPW for further proceedings at which time Sewickley's original MA-71 may be obtained, received in evidence, and settle the issue.