Liberty Nursing Center, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued December 7, 1983, before Judges ROGERS, WILLIAMS, JR. and BARBIERI, sitting as a panel of three.

*Donald E. Wieand, Jr., Roberts, Traud, Wallitsch & Corkery,* for petitioner.

*Jeffrey Gonick,* Assistant Counsel, for respondent.

OPINION BY JUDGE ROGERS, February 16, 1984:

Liberty Nursing Center (Liberty) is a skilled nursing facility providing care to a monthly average of ten or less medical assistance patients and is reimbursed pursuant to regulations promulgated by the Department of Public Welfare (DPW). Section III-G-2 of the Medical Assistance Program Manual for Allowable Cost Reimbursement for Skilled Nursing and Intermediate Care Facilities provides an option for a facility, like Liberty, with a monthly average of ten or less medical assistance patients to negotiate a prospective per diem rate with DPW. The regulation states that:

2. *Determining a cost-related prospective rate for certain facilities.*

As an alternative to having a current interim per diem rate subject to annual adjustment to allowable, reasonable costs under this Manual, a facility with a monthly average of ten Medical Assistance patients or less may negotiate a prospective per diem rate with the Department. Payments under prospective rate will not be subject to annual cost reporting or year-end adjustment under the Medical Assistance Program.

The prospective rate, negotiated prior to the beginning of the Department's fiscal year, will be based on a facility's financial statements and other third party payer audit reports, if available. The established per diem rate will be effective July 1 and remain in effect through June 30 of each year.

A prospective rate for a facility will not exceed the Department's established ceilings. However, prospective rates for facilities will not be included in the rate used to establish ceiling computations.

8 Pa. B. 2834 (1978).

Section III-G-2 was promulgated by DPW pursuant to its rule-making authority as set forth at Sections 201(2), 403(b) and 443.1(3) of the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. §§201(2), 403(b) and 443.1(3) and implements 42 U.S.C. §§1396a(13)(E) which provides that:

A State plan for medical assistance must—

. . . .

(13) provide—

. . . .

(E) . . . for payment of the skilled nursing facility and intermediate nursing facility services provided under the plan on a reasonable cost related basis, as determined in accordance with methods and standards which shall be developed by the State on the basis of cost-finding methods approved and verified by the Secretary.

On December 31, 1976, Liberty submitted information to DPW which showed that its lowest per diem rate for skilled nursing care of private patients was $27.40. This rate was higher than DPW's per diem rate ceiling for skilled nursing care within the county in which Liberty is located and thus in accordance with

Section III-G-2's prohibition of a prospective rate exceeding DPW's established ceiling, Liberty was notified that its prospective per diem rate would equal the ceiling of $27.00 plus $.21 for depreciation and interest costs.

DPW took no action to change the per diem rate ceiling until November 24, 1979 when it published in the Pennsylvania Bulletin a proposed regulation which proposed that the per diem rate ceiling for skilled nursing care within the county in which Liberty is located be raised to $33.32 and that, if adopted, the proposed increase could be effective any time after January 23, 1980. *See* 9 Pa. B. 3879 (1979).

Liberty had not submitted to DPW updated information concerning its per diem rate after December 31, 1976 although its minimum per diem rate had in fact increased. Liberty's president testified on this point that no such increase had been reported because Liberty "had been receiving the maximum allowable rate for Lehigh County because our cost always exceeded the maximum rate for Lehigh County." Liberty's president also testified that although he knew from reading the November 24, 1979 notice in the Pennsylvania Bulletin "that there was going to be an increase," he did not update the 1976 information that had been filed with DPW to show the increase in Liberty's minimum per diem rate for skilled nursing care of private patients because he learned from speaking to local state senators that "there was no chance of the appropriation to go through."

DPW increased the per diem rate ceiling effective February 1, 1980, to the rate it had published previously in the Pennsylvania Bulletin and, as a Reimbursement Specialist with the Office of Medical Assistance testified, DPW followed its departmental practice of using the most current information in its files prior to the effective date of the increase to cal-

culate the new per diem rates. In determining Liberty's new prospective per diem rate for skilled nursing care, DPW used the 1976 information which was the most current information that Liberty had submitted as of January 31, 1980. Based on the 1976 information, DPW increased Liberty's prospective per diem rate for skilled nursing care to $27.40. DPW did not notify Liberty or any other facility of the increase because the General Assembly had not passed the deficiency appropriation necessary to fund it. On June 18, 1980, the appropriation having been made, DPW sent Liberty a letter notifying it of the nineteen cent increase.

As just noted, the increase was effective on February 1, 1980. In April, 1980, Liberty submitted information to DPW which indicated that its lowest per diem rate for skilled nursing care of private patients was $37.80 as of December 20, 1979 and asked that its prospective per diem rate be recalculated based on this new information. DPW refused to recalculate Liberty's prospective per diem rate based on the information submitted by Liberty after the effective date of the increase. Following a hearing, an attorney examiner recommended that DPW properly refused to use the information submitted by Liberty in April, 1980, to recalculate its prospective per diem rate and this recommendation was adopted by the Director of the Office of Hearings and Appeals.

Liberty advances three reasons why it believes that DPW erred by refusing to recalculate its prospective per diem rate, none of which we find convincing.

Liberty contends that DPW's interpretation and implementation of Section III-G-2 is inconsistent with the federal and state law requirement that skilled nursing facilities be reimbursed on a "cost-related basis," because its prospective per diem rate for skilled nursing care effective February 1, 1980 was

more than $10.00 less than its actual cost. *See* 42 U.S.C. §1396a(a)(13)(E) and Section 443.1(3) of the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. §443.1(3). Section III-G-2, however, states that "[t]he prospective rate . . . will be based on a facility's financial statements and other third party payer audited report, if available." Although a prospective rate facility is not subject to annual cost reporting, it must keep the information it provides to DPW current in order to benefit from periodic increases of the applicable per diem rate ceilings because prospective per diem rates are not subject to year-end adjustment. When a prospective rate facility does provide DPW with current information, Section III-G-2 provides that the facility will be reimbursed on a cost-related basis. If after Liberty's president read the November 24, 1979 notice of a proposed increase in the per diem rate ceiling, Liberty had updated the 1976 information on file with DPW prior to February 1, 1980, it would have received a prospective per diem rate equal to the new per diem rate ceiling.

Liberty also contends that DPW did not comply with Section III-G-2 because it failed to negotiate the prospective per diem rate. Section III-G-2 does not mandate DPW to initiate a negotiating process with each prospective rate facility. Rather, it provides that a facility "with a monthly average of ten medical assistance patients or less *may* negotiate a prospective per diem rate with the department." (Emphasis added.) The burden is thus on the prospective rate facility, not DPW, to initiate negotiation.

Liberty's final argument is that it was arbitrary and unreasonable for DPW to decline to recalculate its prospective per diem rate based on the information it submitted in April, 1980. It suggests that when a new per diem rate becomes effective at a time other

than on July 1, the date provided by Section III-G-2, DPW must provide reasonable notice of its rate increase so that prospective rate facilities have an opportunity to submit current financial data. Liberty does not explain what it means by reasonable notice; but Liberty in fact had notice of the proposed increase when its president read the regulation in the Pennsylvania Bulletin. This seems reasonable to us.

Liberty cites *Sewickley Valley Hospital v. DPW,* 48 Pa. Commonwealth Ct. 195, 409 A.2d 496 (1979) as authority for its assertion that DPW should have recalculated its February 1, 1980 prospective per diem rate based on the information it submitted in April, 1980. In *Sewickley,* DPW denied a hospital reimbursement for performing sterilizations upon medical assistance patients because the hospital had by inadvertence failed to complete a part of its application for reimbursement in which evidence that the patients had given an informed consent would have been recorded. After DPW denied reimbursement, the hospital supplied the necessary information but DPW rejected it. We held that the hospital should have the opportunity to supply documentary and testimonial evidence to correct the deficiency in the application. The facts of that case are quite different from those here. Liberty is not seeking to cure a deficiency in an application timely made; it is seeking a retroactive increase in reimbursement based on information it failed to submit at a time before DPW acted on a proposed general increase concerning which Liberty had advance notice.

Order affirmed.

## Order

AND Now, this 16th day of February, 1984, the order of the Director of Hearings and Appeals dated March 26, 1981, is hereby affirmed.